**Milissa GARSIDE, et al.,
Plaintiffs, Appellants,**

v.

**OSCO DRUG, INC., et al.,
Defendants, Appellees.**

No. 89–1738.

United States Court of Appeals,
First Circuit.

Heard Jan. 12, 1990.
Decided Feb. 6, 1990.

Andrew C. Schultz, with whom Mary–Ellen Kennedy and Field & Schultz, Boston, Mass., were on brief, for plaintiffs, appellants.

David R. Geiger, with whom Michael B. Keating, David J. Burgess, and Foley, Hoag & Eliot, Boston, Mass., were on brief, for defendant, appellee, Hoffmann–LaRoche, Inc.

Karen M. Moran, with whom Peter C. Knight, David E. Maglio, and Morrison, Mahoney & Miller, Boston, Mass., were on brief, for defendant, appellee, Beecham, Inc.

Before SELYA, ALDRICH and CYR, Circuit Judges.

SELYA, Circuit Judge.

In this diversity case, appellants calumnize the district court for taking too grudging a view of alternative liability under Massachusetts tort law. But they are attempting to slide into home plate without ever having reached second base.

I

Appellants, plaintiffs below, are Milissa Garside, a minor, and her parents. In April 1982, a physician prescribed amoxicillin to treat Milissa's ear infection. She was simultaneously taking phenobarbital for seizures. On April 23, prescriptions for both drugs were filled at a nearby pharmacy. Milissa took the medication as prescribed. A week later, a rash began to develop. At her physician's direction, amoxicillin was discontinued and erythromycin substituted. Mrs. Garside discarded the amoxicillin vial and the unused pills.

Notwithstanding the changed regimen, the rash worsened. Shortly, Milissa was diagnosed as having contracted toxic epidermal necrolysis (T.E.N.). The consequences were fearsome; Milissa became blind, suffered a significant hearing loss, and is badly scarred.

Plaintiffs sued in state court alleging that the T.E.N. syndrome was caused by an adverse reaction to amoxicillin and/or phenobarbital. Eventually, the defense lineup included the pharmacy, Osco Drug; the alleged manufacturer of the phenobarbital, McKesson Corp.; and the present appellees, Hoffman–LaRoche, Inc. and Beecham, Inc. (who, plaintiffs alleged, manufactured

amoxicillin and supplied it to Osco). McKesson, the last player in the game, removed the case to federal district court. *See Garside v. Osco Drug, Inc.,* 702 F.Supp. 19 (D.Mass.1988) (procedural ruling denying motion to remand).

The third amended complaint contains sixteen counts, four aimed at each defendant. Without exception, the claims are premised on theories of negligence or breach of implied warranty. After considerable discovery, Hoffman and Beecham moved for summary judgment. In a thoughtful rescript, the district court noted that, viewing the record most hospitably to appellants, they could prove only that Hoffman and Beecham "are the two possible manufacturers of the amoxicillin that [Milissa] ingested;"[1] that appellants bore the burden of proving that a given defendant's acts or omissions caused the harm complained of; that, absent identification evidence, appellants could not satisfy this burden; and that Massachusetts would not, on the facts of this case, adopt some neoteric theory of alternative liability "to shift the burden of proving causation/identification from the plaintiff[s] to the two pharmaceutical companies."[2] Accordingly, the district court granted appellees' motions and ordered the entry of final judgment in their favor. *See* Fed.R.Civ.P. 54(b).

## II

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The movant must put the ball in play, averring "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant to establish the existence of at least one fact

issue which is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989); *Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 15 (1st Cir.1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). A "genuine" issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Put another way, a "genuine" issue exists if there is "sufficient evidence supporting the claimed factual dispute" to require a choice between "the parties' differing versions of the truth at trial." *Hahn,* 523 F.2d at 464 (*quoting First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). A "material" issue is one that "affect[s] the outcome of the suit," *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, that is, an issue which, perforce, "need[s] to be resolved before the related legal issues can be decided." *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989).

Our review of summary judgments is plenary. *Id.* In performing that function, we take the record in the light most amiable to the nonmovants and indulge all reasonable inferences favorable to them. *See id.; see also Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 934 (1st Cir.1987); *Finn,* 782 F.2d at 15. On issues where the nonmovants bear the burden of proof, however, they must reliably demonstrate that specific facts sufficient to create an authentic dispute exist. *Catrett,* 477 U.S. at 322–26, 106 S.Ct. at 2552–54. Lastly, in appraising summary

---

**1.** At the eleventh hour, Osco served a supplementary interrogatory answer (not called to the court's attention before it ruled). In light thereof, appellees suggest that there were six possible sources of the drug, not two. Because of our view of the case, *see infra,* we need not dwell upon this aspect of the matter.

**2.** The district court considered, and rejected, alternative liability under the doctrine of *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948); *see also* Restatement (Second) of Torts, § 433B(3) (1965), and under a market share theory, *see, e.g., Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, *cert. denied,* 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980).

judgments, as in other matters, a court of appeals is not wedded to the district court's reasoning. Rather, "[w]e are free, on appeal, to affirm a judgment on any independently sufficient ground." *Polyplastics, Inc. v. Transconex, Inc.,* 827 F.2d 859, 860–61 (1st Cir.1987); *see also Chongris v. Board of Appeals,* 811 F.2d 36, 37 n. 1 (1st Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).

### III

It is hornbook law that to succeed on any of the legal theories pleaded here appellants must be prepared to show, at a minimum, (i) that Milissa ingested amoxicillin, which (ii) alone or in combination with phenobarbital caused T.E.N. to develop, (iii) under circumstances where provision of the medication was actionable, and (iv) that appellees provided it (or, alternatively, can be held legally responsible for its provision). Appellants argue vehemently as to the fourth component—but we see no legally adequate evidence that the second criterion has been met.[3] That omission, as appellees pointed out below and on appeal, is fatal to plaintiffs' case.

Applying summary judgment jurisprudence to the elements of plaintiffs' cause of action, it is plain that, on any theory, plaintiffs bore the burden of adducing some evidence, admissible at trial, supporting their allegation that amoxicillin caused Milissa's adverse reaction. *See Finn,* 782 F.2d at 16; 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2727 at 133–37 (2d ed.1983). And, plaintiffs defaulted on this obligation.

■ We have scoured the record and find that the sole "evidence" of causation consists of an interrogatory answer supplied by the Garsides.[4] This two sentence response reads in its entirety:

[Plaintiffs' expert] Dr. Theodarides will testify that Milissa Garside suffered an adverse drug reaction which induced Toxic Epidermal Necrolysis ("TEN"). Dr. Theodarides will further testify that the causative agents of Milissa Garside's TEN were the combination of amoxicillin and phenobarbital ingested by her.

More was required. After all, a mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax. *Finn,* 782 F.2d at 16; *Soar v. National Football League Players' Association,* 550 F.2d 1287, 1289 n. 4 (1st Cir.1977).

Rule 56(c) provides that a trial court may properly "consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in ruling on a summary judgment motion. The operative word, we suggest, is "consider." Just as nonmovants "may not rest upon the mere allegations or denials of [their] pleading" to oppose summary judgment, Fed.R.Civ.P. 56(e), they cannot expect the court, in considering answers to interrogatories, to give weight to averments not made upon personal knowledge or those which are in a form patently inadmissible at trial.

■ In summary judgment proceedings, answers to interrogatories are subject to exactly the same infirmities as affidavits. *See H.B. Zachry Co. v. O'Brien,* 378 F.2d 423, 425 (10th Cir.1967). Although such answers may be given effect so far as they are admissible under the rules of evidence, they should be accorded no probative force where they are not based upon personal knowledge or are otherwise deficient. *Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 273 n. 1 (2d Cir. 1968); *Zachry,* 378 F.2d at 425–26; *S & S Logging Co. v. Barker,* 366 F.2d 617, 624 n. 7 (9th Cir.1966). Interrogatory answers,

---

**3.** Appellees contend that plaintiffs also failed to make the requisite showing on the third prong because the record is barren of evidence that amoxicillin was negligently manufactured or marketed, or that an implied warranty was violated. We do not reach the issue.

**4.** This response is contained in a document entitled "Plaintiffs' Further Answers to Defendant Hoffman–LaRoche, Inc.'s Interrogatories." The copy in the record on appeal is unsigned and undated. We assume for the sake of argument, as indicated in a transmittal letter accompanying the filing, that Milissa's mother intended to sign the further answers.

like affidavits, can block *brevis* disposition only insofar as they are "made on personal knowledge, ... set forth such facts as would be admissible in evidence, and ... show affirmatively that the [signing party] is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

■ Plaintiffs' interrogatory answer cannot withstand such scrutiny. Expert opinion is admissible and may defeat summary judgment only where it appears that the *affiant* is competent to give an expert opinion. *See, e.g., Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir.1985). In this case, the purported substance of Dr. Theodarides' testimony was not verified by him. A third party's description of an expert's supposed testimony is not suitable grist for the summary judgment mill. *See Fowle v. C & C Cola, A Div. of ITT–Continental Baking Co.*, 868 F.2d 59, 67 (3d Cir.1989); *Vidrine v. Enger*, 752 F.2d 107, 109–10 (5th Cir.1984) (per curiam); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1608–09, n. 17, 26 L.Ed.2d 142 (1970) (unsworn statement does not meet requirements of Rule 56(e)).

■ In short, what we have here—the Garsides' account of what they think (or hope) that Dr. Theodarides' testimony might be—amounts to inadmissible hearsay. It is crystal clear that Mrs. Garside had no scientific knowledge as to causation and was incompetent to testify to any of the matters stated. Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment. *See Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570 n. 4 (7th Cir.1989); *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir.1987); *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir.1986); *Finn*, 782 F.2d at 16–17; *Blair Foods. Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir.1980); *Daily Press, Inc. v. United Press International*, 412 F.2d 126, 133 (6th Cir.), *cert. denied*, 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969); *Morrissey v. Procter &*

*Gamble Co.*, 379 F.2d 675, 677 n. 2 (1st Cir.1967). Thus, absent a showing of admissibility—and none was forthcoming here—appellant may not rely on rank hearsay, whether or not embodied in an interrogatory answer, to oppose proper motions for summary judgment.

■ A case squarely in point is *Vidrine v. Enger, supra*, 752 F.2d 107. There, plaintiff served an answer to interrogatory describing how a particular doctor would testify. *Id.* at 109–10. The Fifth Circuit held this answer to be inadequate to defeat defendant's Rule 56 motion, observing:

> [Plaintiff] presented no affidavit or deposition from Dr. Rein.... His quotation of Dr. Rein is pure hearsay. We have repeatedly held that, while notice pleading is sufficient to open the federal courthouse door, a party opposing a motion for summary judgment, properly put, may not ask the court to try the case in order to determine the facts....

*Id.* at 110. So here: the hearsay account of Dr. Theodarides' anticipated testimony was too thin a buckler against the force of appellees' motions. *See Mack*, 871 F.2d at 181 (evidence relied on to sidetrack summary judgment "cannot be conjectural or problematic [but] must have substance"); *see also* Fed.R.Civ.P. 56 advisory committee's note ("The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").

## IV

Plaintiffs' cause of action arose in 1982. They have been pressing their civil action in one court or another since March of 1984, represented throughout by experienced attorneys. They have had ample time for investigation, discovery, research and assessment.[5] We were told at oral argument that Dr. Theodarides was not unavailable. Yet, plaintiffs have not been able to adduce any proof of a critical element of their cause of action apart from

---

**5.** When the summary judgment motions were served, plaintiffs could have sought additional time to marshal evidence essential to their opposition. *See* Fed.R.Civ.P. 56(f). They elected not to do so.

the interrogatory answer—which is no proof at all.

We need go no further. We will not allow appellants to reap a wholesale return of surmise on so trifling an investment in fact.

*Affirmed.*