52 F.3d 309
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James W. SEIFART, Plaintiff, Appellant,
v.
Herbert R. SKANE, Administrator, Massachusetts State
Carpenters Pension Fund, Defendant, Appellee.
 No. 94-2160.
 United States Court of Appeals, First Circuit.
 Jan. 27, 1995.
April 27, 1995.
Rehearing Denied June 23, 1995.
 
 Frank J. McGee for appellant.
 James F. Grosso with whom Orally & Grosso was on brief for appellee.
 Before BOUDIN, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and STAHL, Circuit Judge.
 STAHL, Circuit Judge.
 
 
 1
 Pursuant to 29 U.S.C. Sec. 1132(a)(1)(B), James W. Seifart brought this action against the Administrator of the Massachusetts State Carpenters Pension Fund ("Fund"), Herbert R. Skane, challenging the denial of disability benefits. The district court granted Skane's motion for summary judgment. We reverse.
 
 I.
 
 2
 The parties do not dispute the facts. Seifart, a carpenter, is a member of the International Brotherhood of Carpenters and Joiners of America ("the union"). Until May 31, 1983, Seifart worked for employers who made pension contributions on his behalf pursuant to collective-bargaining agreements with the union. During this period, Seifart accumulated 8.9 pension credits and 9.6 vesting credits.
 
 
 3
 After May 31, 1983, Seifart began employment with the Boston Housing Authority ("BHA"). On May 8, 1991, while still working for BHA, Seifart became disabled. In November of that year, Seifart applied to the Fund for disability pension. By letter dated November 14, 1991, Skane denied disability benefits on the basis that Seifart had not accumulated 140 hours of pension credits within a thirty-six month period prior to the date of his disability, as Skane claimed the union's pension plan ("the Plan") required. Seifart began the present proceedings in Massachusetts superior court. Skane removed to federal court. Both parties moved for summary judgment and, as noted above, the district court entered judgment for Skane. This appeal followed.
 
 II.
 
 4
 Our review of a summary judgment motion is plenary, taking the record in the light most favorable to the nonmovants and indulging all reasonable inferences in their favor. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 5
 Where, as here, the administrator or fiduciary of an ERISA-regulated plan has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," we set aside a fiduciary's decisions only if they are arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).
 
 
 6
 The benefit provisions of an ERISA-regulated plan are interpreted under principles of federal substantive law. Bellino v. Schlumberger Technologies, Inc., 944 F.2d 26, 29 (1st Cir.1991). Contract language in an ERISA action is to be given its plain meaning, Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 267-68 (1st Cir.1994), and a court must give reasonable effect to all terms and conditions, see, e.g., Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 586 (1st Cir.1993).
 
 
 7
 At the heart of this controversy lies the interpretation of section 3.10(b) of the Plan. Under that provision, a participant may retire on a disability pension if:
 
 
 8
 He has become disabled, as hereinafter defined, after he has accumulated at least 10 Pension Credits or 10 Vesting Credits, which may include a maximum of one Pension Credit or one Vesting Credit granted under Section 4.01(c)(II), of which 140 hours of such Pension Credit was accumulated in the 36-month period prior to the date of disability.
 
 
 9
 Under the provisions of the Plan, Seifart accrued vesting credits, but not pension credits, for his years with BHA. Accordingly, Seifart argues, he has 16.9 vesting credits--a point conceded by Skane in his brief--and thus qualifies under the language of the Plan. Skane argues, however, that section 3.10(b) sets out a two-prong test: (1) a participant must accumulate the requisite pension or vesting credits, and (2) 140 hours of pension credits must have been earned within the thirty-six months prior to the date of disability.[1] Skane argues that, because Seifart earned no pension credits while working for the BHA, he fails the second prong.
 
 
 10
 We think Skane's reading flies in the face of the plain language of the Plan. Under the Plan, a participant may qualify for disability retirement benefits by earning pension credits or vesting credits; if a participant qualifies by means of pension credits, then the 140-hour requirement obtains. Here, the parties agree that Seifart has earned more than ten vesting credits. Under the language of the Plan, then, Seifart qualifies without reference to the pension credit requirements.
 
 
 11
 Interpreting a contract in a manner contrary to its clear language is arbitrary and capricious. See, e.g., De Nobel v. Vitro Corp., 885 F.2d 1180, 1188 (4th Cir.1989). Skane did just that in this case, and accordingly, we reverse the decision of the district court. That said, we note that the district court appears to have addressed this case on the premise that the 140-hour requirement applied to the appellant. There is even a trace of this assumption in the appellant's brief on appeal, and the appellee takes this position for granted. We find the purpose and interconnection of the pertinent provisions difficult to discern. We have decided this case in light of what appears to us to be the plain language of the plan, but the fact that the parties have not discussed the seemingly crucial language on which we base our holding leads us to invite a petition for reconsideration if there is some reason why the language should be taken to mean something that it does not appear to say.
 
 III.
 
 12
 For the foregoing reasons, the decision of the district court is
 
 
 13
 reversed.
 
 
 
 *
 Of the Eighth Circuit, sitting by designation
 
 
 [1]
 The district court apparently agreed with Skane's interpretation of the Plan's language