104 F.3d 348
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
James A. MURRAY, Plaintiff, Appellant,
v.
CITY OF BOSTON, Defendant, Appellee.
 No. 96-1848.
 United States Court of Appeals, First Circuit.
 Dec. 17, 1996.
 
 Mark S. Bourbeau, with whom Bourbeau and Bourbeau Bonilla & Tocchio were on brief, for appellant.
 Krisna M. Basu, Assistant Corporation Counsel, with whom Merita A. Hopkins, Corporation Counsel, was on brief, for appellee.
 D.Mass.
 AFFIRMED.
 Before STAHL and LYNCH, Circuit Judges, and WOODLOCK,* District Judge.
 PER CURIAM.
 
 
 1
 Plaintiff James Murray appeals from the entry of summary judgment on his employment-related claim against the City of Boston. Murray, a former city employee, brought claims against the City of Boston and Mayor Menino under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, Mass. Gen. L. ch. 12, § 11I ("MCRA").
 
 
 2
 Murray alleges that, in 1992, he was terminated from his position as Executive Assistant to the Commissioner for Elderly Affairs, and that, in 1994, he was constructively terminated from his subsequent position as a reporter for Boston Seniority, a Commission for Elderly Affairs publication. Murray resigned from the latter position in March 1994. Murray alleges that these employment actions were punishment for expressing his political beliefs, specifically for running for City Council in 1991 and for Mayor in 1993 against the incumbent Mayor of Boston.
 
 
 3
 The district court granted summary judgment for the defendants on all claims. Murray appeals only from the judgment against him as to the City. Because Murray has not adduced evidence sufficient to establish municipal liability under § 1983, we affirm the district court's grant of summary judgment on that claim.[1] As Murray has failed to show that he was subject to any threats, intimidation, or coercion, a necessary element of claims under the MCRA, we also affirm the grant of summary judgment on the state law claim.
 
 
 4
 In order to make out a claim of municipal liability under § 1983, Murray must show that the "execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. New York Dep't of Social Servs., 436 U.S. 658, 694 (1978). The theory of respondeat superior has no place in such claims. Id. at 691. The "custom" on which liability is premised must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. (quoting Adickes v. S.H. Kress Co., 398 U.S. 144, 167-68 (1970)(internal quotation marks omitted)). Murray does not contend that there is a formal act or written policy which embodies the so-called policy of retaliation. Nor does he contend that "anyone in city government ever promulgated, or even articulated, such a policy." City of St. Louis v. Praprotnik, 485 U.S. 112, 128 (1988). Rather, he says that there is an informal policy or custom of punishing city employees who express political views different than those of the administration.
 
 
 5
 This court had said that there are "two requirements for plaintiffs to meet in maintaining a § 1983 action grounded upon an unconstitutional municipal custom":
 
 
 6
 First, the custom or practice must be attributable to the municipality....[I]t must be so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. Second, the custom must have been the cause of and the moving force behind the deprivation of constitutional rights.
 
 
 7
 Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir.) (internal citations omitted), cert. denied, 493 U.S. 820 (1989).
 
 
 8
 On the first point, Murray naturally relies on his own employment history, which need not be detailed here, to support his claim that there is a "well-settled and widespread" custom. But evidence of a single occurrence is usually insufficient, in and of itself, to establish a municipal "custom and usage." St. Hilaire v. City of Laconia, 71 F.3d 20, 29 (1st Cir.1995), cert. denied, 116 S.Ct. 2548 (1996); Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 16-17 (1st Cir.1995).
 
 
 9
 Murray tries to buttress his claim that there is a "custom" by pointing to three lawsuits filed in the United States District Court for the District of Massachusetts and one complaint filed before the Massachusetts Commission Against Discrimination by present or former city employees.[2] There is considerable doubt that three individual law suits and one administrative complaint, even if each made allegations comparable to Murray's, would suffice to show a custom with the force of law. But these other disputes are not comparable to the present action and do not involve similar allegations of retaliation because of political opposition to the incumbent administration. None of the complaining individuals was, from the evidence presented, a candidate for office. Even if Murray's complaint is read to allege a broader theory of retaliation, encompassing more than just retaliation against city employees who run for office against incumbent city officials, the other fact settings he proffers do not support his claim that there is such a custom or policy.
 
 
 10
 These claims involve diverse city agencies, and different city officials were responsible for the employment actions at issue. One claimant makes allegations of denial of due process in how his job was terminated, one alleges termination following her criticism of her employing agency, one alleges sexual harassment, and one alleges retaliation for speaking out against sexual harassment. Murray makes no attempt to link these various claims to a central policymaker. These disparate facts do not fall easily under even the broader category of a "custom" of punishing city employees for expression, in any form, of political views contrary to those of the city administration.
 
 
 11
 Such a protean view as that offered by Murray would render the "custom" requirement meaningless. In contrast with the showing made here, this court has credited proof, such as that offered in Bordanaro, of uncontroverted evidence from witnesses with first hand knowledge of a practice of particular city officials who repeatedly engaged, over a period of time, in exactly the same sort of unconstitutional behavior. See Bordanaro, 871 F.2d at 1156. As we said in Mahan, plaintiff "has not brought his case near the Bordanaro umbrella, let alone under it." Mahan, 64 F.3d at 16.
 
 
 12
 To establish a claim under the MCRA, Mass. Gen. L. ch. 12, § 11I, plaintiff must prove that the alleged interference or attempted interference with rights was by "threats, intimidation or coercion." Mass. Gen. L. ch. 12, § 11H; Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 337 (Mass.1996). The Supreme Judicial Court has said that:
 
 
 13
 "[t]hreat" in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct.... [A] definition of coercion [is] "the application to another of such force, either, physical or moral, as to constrain him to do against his will something he would not have done."
 
 
 14
 Planned Parenthood League v. Blake, 631 N.E.2d 985, 990 (Mass.), cert. denied, 115 S.Ct. 188 (1994) (internal citations omitted). Murray presents no evidence from which a court could conclude that he was subjected to "threats, intimidation, or coercion" of this nature. Therefore, his state law claim fails on the merits as well.
 
 
 15
 The judgment of the district court granting summary judgment to the defendant on all claims is affirmed.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 Defendant also argues that Murray was not constructively terminated and that, on the merits, he has not shown any retaliation, much less for the expression of his political views. We find it unnecessary to reach these arguments but note that they appear well taken
 
 
 [2]
 We assume arguendo that the deposition transcripts proffered by Murray constitute admissible evidence. The City argues that they are inadmissible hearsay. See Garside v. Osco Drug, Inc., 895 F.2d 46 (1st Cir.1990)